Manfred P. Muecke (SBN: 222893)
mmuecke@manfredapc.com
**MANFRED, APC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 550-4005
Fax: (619) 550-4006

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

CRAIG WOOLARD, on Behalf of Himself and All Others Similarly Situated,

  Plaintiff,

  vs.

THE GLAD PRODUCTS COMPANY, a Delaware Corporation, and THE CLOROX COMPANY, a Delaware Corporation,

  Defendants.

Case No.: **'24 CV 0504 JO   BLM**

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Craig Woolard ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against The Glad Products Company and The Clorox Company (collectively, "Defendants" or "Glad"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendants.

2. This Court has personal jurisdiction over Defendants. Defendants have sufficient minimum contacts with the state of California and purposefully availed itself, and continues to avail itself, of the jurisdiction of this California through the privilege of conducting its business ventures in the state of California, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendants do business throughout this district, and Plaintiff made his purchase of Defendants' Glad Recycling Trash Bags in San Diego, California from a retail store in this district and his purchased Glad Recycle Trash Bags was delivered to, and used, in this district.

## THE PARTIES

4. Plaintiff Craig Woolard is a natural person and a citizen of San Diego County, California. Plaintiff purchased the Glad Recycling Trash Bags from a local retailer.

Prior to his purchase, Plaintiff saw and reviewed Defendants' advertising claims on the packaging and labeling itself, and he made his purchase of the trash bags in reliance thereon. Plaintiff specifically relied upon representations made by Defendants that its Glad Recycling bags were suitable for recycling. Plaintiff did not receive the promised benefits or receive the full value of his purchase. Plaintiff would purchase the Product in the future if it worked as advertised.

5.     Defendant The Glad Products Company is a Delaware corporation headquartered in Oakland, California. Glad maintains its principal place of business at 1221 Broadway, Oakland, CA 94612. Glad was doing business in California at all relevant times, including the Class Period. Directly and through its agents, Glad has substantial contacts with and receives substantial benefits and income from and through the State of California. Glad and its agents manufactured, promoted, marketed, and sold the Products at stores and retailers throughout California and the United States, as well as on the internet. Glad and its agents prepared, authorized, ratified, and/or approved the false and deceptive labeling and statements on the Products' packaging and disseminated them throughout California and the United States.

6.     Defendant The Clorox Company is a Delaware corporation headquartered in Oakland, California and maintains its principal place of business at 1221Broadway, Oakland, CA 94612. Clorox was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, The Clorox Company has substantial contacts with and receives substantial benefits and income from and through the State of California. The Clorox Company and its agents manufactured, promoted, marketed, and sold the Products at stores and retailers throughout California and the United States, as well as on the internet. The Clorox Company and its agents prepared, authorized, ratified, and/or approved the false and deceptive labeling and statements on the Products' packaging and disseminated them

throughout California and the United States.

7.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS

8.      Americans are also more conscious than ever of their environmental impact as consumers.[1]  Environmental product claims drive purchase decisions.[2]  And most consumers are willing to pay a premium for sustainable products. In PWC's 2019 Global Consumer Insights Survey, 37% of consumers stated that they specifically seek out products with "environmentally friendly packaging."[3]

9.      Survey data compiled by The Recycling Partnership and Southwest News Service indicates that consumers are willing to pay, on average, 26% more for sustainable products. The same survey found that approximately 70% of respondents would go out of their way to support companies making strong efforts to be sustainable.[4]

10.     To capitalize on this trend in consumer choice, many companies now market and sell sustainable products—in other words, they are "going green."[5] In 2018, products that featured label claims related to recyclability and sustainability

---

[1] Greg Petro, "Consumers Demand Sustainable Products and Shopping Formats," FORBES (March 11, 2022), https://www.forbes.com/sites/gregpetro/2022/03/11/consumers-demand-sustainable-products-and-shopping-formats/
[2] Amy Emmert, "The Rise of the Eco-Friendly Consumer," STRATEGY+BUSINESS (July 8, 2021), https://www.strategy-business.com/article/The-rise-of-the-eco-friendly-consumer
[3] "It's Time for a Consumer-Centered Metric: Introducing 'Return on Experience," PWC (2019), https://www.pwc.com/cl/es/publicaciones/assets/2019/report.pdf
[4] "Survey: Americans Prefer Sustainable Companies," THE RECYCLING PARTNERSHIP (May 28, 2020), https://recyclingpartnership.org/americas-prefer-sustainable-companies/
[5] "Why More and More Companies are Finally Going Green," RTS (February 21, 2022), https://www.rts.com/blog/why-more-and-more-companies-are-finally-going-green/

3

accounted for 16.6% of the consumer-packaged goods market and delivered nearly $114 billion in sales.[6]

11.     Products that do not biodegrade are harmful to the environment. "Biodegradable" materials are those that can be decomposed by nature, eventually becoming part of the land. Conversely, "non-biodegradable" materials do not break down naturally and can last for millennia after being deposited in landfills and natural habitats. The accumulation of non-biodegradable waste disrupts ecological balance by polluting ecosystems, harming wildlife, and contributing to several other environmental problems.[7]

12.     Plastic materials account for a large portion of non-biodegradable waste that negatively impacts the environment. As of 2015, humans had manufactured around 8.3 billion tons of plastic, and around 60% of it is still in existence, deposited somewhere on the planet. A large portion of these plastics come from single-use packaging—in 2015, 145 million metric tons of plastics went into producing packaging, and 141 million tons were discarded in the same year.[8]

13.     Currently, plastic waste that is not recycled, and that does not end up deposited in landfills or littered, is incinerated. According to estimates, approximately 16% of U.S. plastic waste was incinerated in 2018.  The incineration of plastic waste releases substantial amounts of carbon dioxide into the atmosphere, contributing to climate change and a host of other environmental problems. Additionally, burning plastic

---

[6] Tensie Whelan and Randi Kronthal-Sacco, "Research: Actually Consumers Do Buy Sustainable Products," HARVARD BUSINESS REVIEW (June 19, 2019), https://hbr.org/2019/06/research-actually-consumers-do-buy-sustainable-products
[7] Kevin Lee, "What Are the Effects of Non-Biodegradable Waste?" SCIENCING (April 23, 2018), https://sciencing.com/styrofoam-biodegradable-22340.html
[8] Roni Dengler, "Humans Have Made 8.3 Billion Tons of Plastic. Where does it all Go?" PBS (July 19, 2017), https://www.pbs.org/newshour/science/humans-made-8-3-billion-tons-plastic-go.

releases toxic gases, heavy metals, and carcinogenic particles into the air, destroying the air quality and health of local communities.[9]

14.     Recycling must be done properly. According to experts and climate activists, "recycling isn't working in the U.S."[10]  One fundamental reason is the contamination of recycling bins with non-recyclable items, including "Recycling" bags like the Products—or any other non-recyclable items. Once contamination occurs, all the otherwise recyclable contents of those bins can no longer be recycled. Contamination occurs when non-recyclable waste, including the Products, is placed into recycling bins, preventing the proper sorting of recyclable goods. Recycling that is contaminated invariably ends up deposited in landfills, washed into the ocean, or polluting our atmosphere. According to Recyclops, about 25% of all recycling is contaminated and thus is deposited in landfills with other non-recyclable waste.[11]

15.     While contamination can result from reckless recycling, not all contamination is purposeful. Unfortunately, consumers often attempt to recycle waste that they believe to be recyclable based on a product's false label claims. To ensure proper recycling, it is therefore crucial that companies accurately represent the recyclable (or non-recyclable) nature of their products.

16.     To leverage the known consumer demand for sustainable goods, and consumer's willingness to pay more for them, certain trash bag companies, including Defendants, began marketing trash bags claimed to be designed specifically for

---

[9] "Why burning plastic won't solve the plastic crisis" GREENPEACE (July 28, 2022), https://www.greenpeace.org.uk/news/incineration-burning-plastic-crisis/

[10] Renee Cho, "Recycling in the U.S. is Broken. How Do We Fix It?" COLUMBIA CLIMATE SCHOOL (March 13, 2020), https://news.climate.columbia.edu/2020/03/13/fix-recycling-america/

[11] "Understanding Recycling Contamination" RECYCLOPS, https://recyclops.com/understanding-recycling-contamination/

"Recycling." But the bags are made of the same non-recyclable plastic as "regular" trash bags.

17.    State consumer fraud authorities have started to take notice and are investigating claims of recyclability for plastic bags made out of LDPE, the material Defendants use for their "Recycling" bags. Recently, Hefty was sued by the State of Connecticut for consumer fraud, for naming and selling a line of "Recycling" trash bags—because consumers would reasonably, but incorrectly, believe the bags are both recyclable and suitable for municipal use. Defendants here are engaged in the same consumer fraud.

18.    It makes sense that consumer fraud authorities are concerned about "Recycling" bags like Glad's. First, these "Recycling" bags are made with plastic materials that are not recyclable anywhere in the Nation. Second, municipalities will not even accept these bags for recycling use unless they have a "clear bag" or "blue bag" program. And most do not. Finally, the false Product name and label trick consumers into believing they can bag recyclables outside of these limited programs; when that happens, the entire bag of recyclables is diverted to landfills or incinerators as regular trash. Consumers who care about the environment are unknowingly contributing to making pollution worse—and paying Glad a premium to do so.

19.    Defendants' "Recycling" bags are not made of recyclable plastics. Rather, the Products are made from LDPE plastics, which are not recycled by recycling facilities in the United States due to their low monetary value.

20.    The United States used to sell its recyclable waste to China. However, since China stopped purchasing the United States' recycling, there have been significant changes in plastic acceptance policies of the U.S. MRFs due to declines in the demand for and value of collected plastic material.

21.     This transition has led to realizations about the economics of recycling, notably that LDPE plastics have a "negligible-to-negative value." When MRFs lose money collecting this low-value plastic, they inevitably stop recycling it.[12]   This means that, because they are made from low-value LDPE plastics, recycling bags like the Products are rejected by MRFs and are instead deposited in landfills or incinerated.

22.     Thus, even if "Recycling" bags might be recyclable in theory, the Product's labeling is still deceptive. According to the FTC, technical recyclability does not suffice for a recyclability claim if there is no established program available to recycle the product. FTC regulations instruct that, even if a product is made from recyclable material, it should not be marketed as recyclable if "because of its shape, size, or some other attribute, [it] is not accepted in recycling programs." (16 C.F.R. § 260.12).

23.     A report published by Greenpeace in February 2020 cautioned companies against making recyclability claims in marketing materials or on products other than for PET #1 and HDPE #2 bottles and jugs. The report warned that such representations "are not accurate in the U.S. and expose companies to legal, reputational and financial liability risks," and explained that companies continuing to make these claims "are liable for misrepresentation and need to ensure that the claims are accurate and not deceptive or misleading."[13]

24.     Defendants' largest competitor, Hefty, also uses LDPE plastics to manufacture its so-called "Recycling" bag products.

---

[12] John Hocevar, "Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability," GREEN PEACE (February 18, 2020), https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf
[13] Hocevar, supra.

25.    On June 13, 2022, the Connecticut Attorney General brought a consumer fraud enforcement action against Reynolds Consumer Products, Inc., the owner/distributor of Hefty® brand Products, based on the labeling and marketing of its "Recycling" bags. The suit alleges that Hefty's bags, despite their name "Recycling," are not, in fact, recyclable and are otherwise incompatible with recycling facilities in Connecticut.[14]

26.    As the suit explains, Hefty's "Recycling" bags are not recyclable because they are made from low-value LDPE plastics, just like ordinary trash bags. Announcing the consumer fraud action, the AG's office remarked: "There are no municipal recycling programs anywhere in Connecticut that can accept and recycle these bags and the recyclables they contain. The Office of the Attorney General is unaware of any recycling facility nationwide that welcomes these bags." (Emphasis added).

27.    Defendants' same-named "Recycling" bags are made of the same non-recyclable low-value LDPE plastics that are generally incompatible with municipal recycling nationwide. Thus, what the Attorney General of Connecticut said with respect to Hefty applies with equal force to Glad's "Recycling" bags: "These bags are fundamentally unsuitable for their advertised purposes."

28.    By selling the Products nationwide with the false name "Recycling," other misrepresentations and accompanying deceptive imagery, Defendants mislead reasonable consumers to believe that the Products are both recyclable and fit for municipal use throughout California and the United States. As a result, consumers pay an unwarranted premium for the Products based on their perceived recyclability,

---

[14] "Attorney General Tong Sues Reynolds Over Non-Recyclable Hefty 'Recycling' Trash Bags" OFFICE OF THE ATTORNEY GENERAL CONNECTICUT (June 14, 2022), https://portal.ct.gov/AG/Press-Releases/2022-Press-Releases/AG-Tong-Sues-Reynolds-Over-Hefty-Recycling-Bags

reasonably believing that they are making a sustainable choice and a positive environmental impact.

29.     Reasonable consumers like Plaintiff are shocked to find out the Products are not recyclable—anywhere—nor suitable for municipal use in the vast majority of municipalities across the nation. Worse, consumers do not realize municipal use of "recycling" bags as advertised can result in all the otherwise recyclable goods they place inside the bags being instead diverted to landfills or incinerated. Consumers are paying a premium for a product they reasonably believe will help the environment, but in reality, it has a net negative impact on recycling nationwide.

30.     One of the most common reasons recyclables are considered contaminated and end up in landfills is because they are collected and deposited in plastic bags. Because recyclables must go through a sorting process at recycling plants, virtually all municipalities prohibit placing recyclables in plastic bags of any kind. Not only do the bags prevent the materials inside from being sorted, but they also endanger plant workers who must manually remove bags that get stuck in the sorting machines. For these reasons, bagged recyclables are not actually recycled. Rather, they are rejected outright by MRFs and diverted to landfills or incinerators.

31.     Only places with a "clear bag" or "blue bag" program permit municipal use of "recycling" trash bags. "Clear bag" or "blue bag" programs are virtually nonexistent in California and throughout the United States.

32.     Due to the proliferation of falsely labeled "recycling" bags, like the Products, and the public's general misunderstanding across the nation that bagging recyclables is advisable, cities are spending tax-payer money to counter the false claims and misunderstandings, with "Don't bag your recyclable" ad campaigns. Defendants are contributing to and taking advantage of widespread misunderstanding by consumers that bagging recyclables is OK, even though most everywhere it is not.

33.    Consumers are confused and tricked by Glad's "Recycling Bags." A nationwide organization dedicated to recycling named "Recycle by City" warned publicly, using an image of Defendants' Products:

"Don't be fooled: If your city does not accept plastic bags for recycling [as most don't], they won't accept these either. A plastic bag is a plastic bag, no matter what Glad Products calls it." (Emphasis added).



34.    Marketing trash bags designed for municipal "recycling" is thus inherently misleading. Consumers who purchase "recycling" bags do so to positively impact the environment by practicing sustainable habits, and they are unaware that municipal use of these bags, in fact, harms the environment and is impeding sustainability goals nationwide.

35.    The harm caused by Defendants' deception is multifaceted: it harms consumers by causing them to pay an unwarranted premium for the Products based on deceptive recyclability claims, endangers recycling plant workers who must manually remove the Products from jammed machinery, and ultimately harms the environment by preventing the recycling of materials that would be properly recyclable, if not for use of the Products. As the Attorney General of Connecticut aptly put it: Any recyclable items inside "Recycling" bags end up "tossed on the trash heap." (*See* Connecticut AG Tong Press Release, supra)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

36.    Defendants' products are not recyclable. Defendants misleadingly name and otherwise label the Products "Recycling" bags and market them using imagery that reasonable consumers understand to indicate recyclability, even though the Products themselves are not recyclable anywhere in the Nation and in most places, municipal use of the Products contaminates otherwise recyclable waste.

37.    The FTC's "Green Guides" state that "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable," and that products should not be marketed as recyclable unless they can be "recovered from the waste stream through an established recycling program". (See 16 C.F.R. § 260.12(a)). The FTC has also declared that where "any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive." (See 16 C.F.R. § 260.12(d) emphases added).

38.    The "Recycling" representation, prominently displayed on the Products' label and reinforced by blue "chasing arrows," a symbol universally recognized to indicate recyclability, causes consumers to reasonably, but incorrectly believe that the Products are recyclable. Nowhere on the Products' label do Defendants acknowledge that their "Recycling" bags are not recyclable, despite their knowledge on this point.

39.    Not only does Glad fail to make the same clear, it does the opposite: adding the "chasing arrows" to the product name "Recycling" to further the false notion that the Product is recyclable.

40.    Moreover, the declaration appearing directly under the "Recycling" representation — "Designed for Municipal Use"—is deceptive because nearly all recycling programs in California and the United States prohibit municipal use of the Products and will reroute recyclables improperly placed in the Products to landfills or incinerators.

41.    As the FTC states: "An item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable." Id.

42.    It is misleading for Defendants to market the Products as "Recycling" bags because municipal use of the Products as "designed" impedes recycling efforts in most jurisdictions across the United States. By using the Products as advertised, consumers are unknowingly sending nonrecyclable waste (the Products) to MRFs and requiring workers to take extra (potentially dangerous) steps to separate the Products and their contents from other recyclable materials. Municipal use of the Products results in the contamination of other recyclables, prevents proper sorting, violates no-bagging policies, and prevents otherwise recyclable contents of the bags from being recycled at all. Consumers like Plaintiff reasonably infer that "Recycling" Products "Designed for Municipal Use," and on the shelves at their local stores, will be recycled and accepted for use by their recycling programs.

43.    In states like California, where virtually all municipalities prohibit the bagging of recyclables, the mere act of selling the Products as "Recycling" bags "Designed for Municipal Use" is invariably deceptive. The same is true in all other states. There are only a handful of "blue bag" or "clear bag" programs nationwide, and in some states, zero.

44.    Without regard for this limited municipal use, Defendants knowingly distribute the Products nationwide as DESIGNED FOR MUNICIPAL USE including in communities where such use is prohibited – which is almost every community.

45.    Under the Green Guides, unqualified recyclability claims are permitted only if they are true for a substantial majority of consumers or communities where the products are sold. (16 C.F.R. § 260.12(b)(1)). Because the "Recycling" bags are not recyclable anywhere, and most municipalities will not accept them for "use" either,

1
2
Defendants must sufficiently qualify their recyclability claims. Defendants fail to do so.

3
4
5
6
7
8
9
10
11
12
13
46.    According to the Green Guides, a product may qualify recyclability claims by stating the percentage of consumers or communities to whom the claim will apply. Alternatively, the Guides recommend qualifications that vary in strength depending on how many communities or consumers to whom the claim applies. For example, if a claim applies to less than 60% of consumers where the product is sold, the Guides recommend a statement as follows: "This Product may not be recyclable in your area" or "Recycling facilities for this product may not exist in your area." Critically, where there are only a few communities that support recyclability claims, as is the case here, the Guides instruct a qualification explicitly state so: "This product is recyclable only in a few communities that have appropriate recycling facilities." (See 16 C.F.R. § 260.12(b)(2)) (emphasis added).

14
15
16
17
18
47.    Under this guidance, the Products' naked instruction to "Please Check Your Local Facilities" is insufficient to avoid consumer deception, as it fails to provide any indication that most facilities and programs will not support the recyclability claims and that in fact, only a few will accept them for use.

19
20
21
22
23
24
25
48.    Over twenty years ago, the FTC specifically called out "please check" language as invariably deceptive where a recyclability claim depends on a program that is not widely available. At that time, the FTC amended its Green Guides to advise that any qualifying "please check" language must also note affirmatively that a program is "limited" or may not be available, where that is the case, as it is here. No such language appears on the Products' label, the Products' website, or anywhere else.

26
27
28
49.    Green Guide Example 4 is instructive. In that example, the naked qualification to "Check to see if recycling facilities exist in your area" is deemed deceptive because it does not adequately disclose the "limited availability" of programs to

support the recyclability claim. This is nearly identical to the language on the Products, which is deceptive for the same reason: it advises consumers simply to "check" rather than informing them of the very limited chance the Products are suitable for municipal use where they live.

50.     Without any indication as to why they needed to "check" with their "local facilities" (or even to which "facilities" Defendants refer) Plaintiff did not, and reasonable consumers do not, understand this language to mean they may not use the Products in most municipalities and thus odds are, they cannot use them in their municipality. A more reasonable interpretation is a consumer need only check locally to find out how to use the bags — not to find out they cannot use them at all —especially given the more prominent statement: "Designed for Municipal Use." This likelihood of consumer confusion is a perfect example of why the FTC declared "Please Check" disclaimers ineffective over twenty years ago. See below, Defendants' Labeling.

51.     Glad's website promotes an overall eco-friendly brand image and is riddled with claims that tout the sustainability of its Products in general. On its home page, Defendants immediately direct consumers to learn about Glad's "sustainability journey."



52.     Defendants hold themself out on the Glad website and elsewhere as a source of expert information on recycling. Still, among all their "Recycling" tips, nowhere do they advise what recycling experts and most municipalities have been trying to get across to consumers: that they should not be bagging recyclables. This is a deliberate choice to put profits over the environment and consumers who care about the environment, as it would reveal why consumers do not need and in fact, should not buy "Recycling" bags for municipal use.

53.     Instead, Glad has chosen to take advantage of the widespread but incorrect belief that bagged recyclables are OK by inventing a line of Products that adds to the confusion and furthers the very behavior municipalities across the Nation are trying to stop because it is *antithetical* to recycling.

54.     One Member of the Board of Directors of the National Recycling Coalition cited Glad "Recycling" bags, in particular, as a reason why the public may be continuing to put recycling in plastic bags, despite requests by recycling collectors not to, herself pleading with Defendants: "@GladProducts please stop confusing consumers!"



55.     The brand's focus on eco-consumerism and its purported commitment to sustainability further supports the reasonableness of consumers' belief that the Products' recyclability claims are truthful. See Glad's Sustainability Mission below.



56.    Below its "Doing more to waste less" mission, Glad details its "Four Pillars of Sustainability," features articles written by its sustainability "Experts," and gives consumers the opportunity to "listen and learn" with links to podcasts. This wealth of information on sustainability gives consumers the impression that Glad is educated on and committed to sustainability, and thus lends credence to its sustainability-driven label claims.

16



All the Ways to Reduce Waste in Your Home

How To , Sustainability

57.   Additionally, the Products shown below are available for purchase under the website's "Sustainable Solutions" tab. Sustainable Solutions. A "Recycling" bag that is not recyclable anywhere, and that affirmatively impedes recycling in most places, is hardly a "sustainable solution." It is part of the problem. As the Attorney General of Connecticut put it: "Placing recyclables in plastic bags results in those items being thrown away, which is completely counter to what we need to be doing." (See Connecticut AG Tong Press Release, supra)



17

58.    Nowhere on Glad's website do Defendants discuss the number of municipalities that accept, or do not accept, these bags. Defendants do not provide any resource, much less a simple, user-friendly resource—such as a location-based list—that informs consumers where the bags can and cannot be used. And while the website references "applicable municipal programs," nowhere is there a statement indicating such programs are few, limited, or otherwise unlikely to exist for most consumers. As such, the website language is also deceptive under FTC Green Guides and otherwise insufficient to dispel deception (even beyond the fact that the "applicable municipal program" language does not even appear on the Product label or otherwise at the point of purchase.) (See below, Municipal Programs).



59.    Under Cal. Pub. Resources Code § 42355.51, "Recyclable material" means those materials that are capable of being recycled in the manner required under this code provision.

60.    Despite Defendants' representations, the Glad "Recycling" trash bags are not recyclable at California solid waste disposal facilities and are not suitable for the disposal of recyclable products at solid waste disposal facilities.

61. Glad "Recycling" trash bags are made from low-density polyethylene and are not recyclable at California's solid waste disposal facilities.

62. When Glad "Recycling" trash bags are delivered by waste haulers to a California solid waste disposal facility the bags and all of the otherwise recyclable items contained within them are not delivered to a recycling facility but are treated as regular solid waste materials.

63. California's waste disposal facilities do not recycle either Glad "Recycling" trash bags or the recyclable materials contained in them.

64. The otherwise recyclable items (like cardboard, glass, aluminum, etc.) placed into Glad "Recycling" trash bags by California consumers who are trying to recycle those items ultimately end up in landfills or incinerators and are not recycled.

## CLASS ACTION ALLEGATIONS

65. **Class Definition:** Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**National Class**: All persons in the United States who purchased the Products during the fullest period of law.

In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

**California Sub-Class**: All persons in the State of California who purchased the Products during the fullest period of law.

66. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

67.   **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

68.   **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

69.   **Commonality:** The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendants committed the conduct alleged herein;

b. whether Defendants' conduct constitutes the violations of laws alleged herein;

c. whether Defendants' labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether the Glad Recycle Trash Bags are adulterated and/or misbranded under the California or federal law;

e. whether Defendants knew or should have known that the representations were false or misleading;

f. whether Defendants knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Glad Recycle Trash Bags;

g. whether Defendants' representations, concealments and non-disclosures concerning the Glad Recycle Trash Bags are likely to deceive consumers;

h. whether Defendants' representations, concealments and non-disclosures concerning the Glad Recycle Trash Bags violate California consumer laws and/or the common law;

i. whether Defendants should be permanently enjoined from making the claims at issue; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

70.    **Predominance and Superiority:** Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure

21

that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. when Defendants' liability has been adjudicated, claims of all Class members can be determined by the Court;

c. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continues to reap and retain the substantial proceeds of their wrongful conduct.

71. **Manageability:** The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Violations of the California Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750

72. Plaintiff incorporates all preceding factual allegations as if fully set forth here.

73.    Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

74.    Plaintiff and each member of the Class are consumers who purchased the Product from Defendants for personal, family, or household purposes.

75.    Plaintiff and the Class are "consumers" as that term is defined by the California Consumers Legal Remedies Act (the "CLRA") in Cal. Civ. Code § 1761(d).

76.    Defendants' sales of its product to Plaintiff and Class members are a "service" within the meaning of Cal. Civ. Code § 1761(b).

77.    Defendants' actions, representations, and conduct are covered by the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of services to consumers.

78.    Defendants sold the Product to Plaintiff and the Class members without adequately disclosing the product was not suitable for recycling.

79.    Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continues to violate CLRA Section 1770(a)(5), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresents the particular characteristics, benefits and quantities of its services.

80.    Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  By engaging in the conduct set forth herein, Defendants violated and continues to violate CLRA Section 1770(a)(7), because

23

Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresents the particular standard, quality or grade of its services.

81.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continues to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants advertises services with the intent not to sell the services as advertised.

82.    Cal. Civ. Code § 1770(a)(14) prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."  By engaging in the conduct set forth herein, Defendants violated and continues to violate CLRA Section 1770(a)(14), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresents the rights, remedies, and obligations of its services.

83.    Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  By engaging in the conduct set forth herein, Defendants violated and continue to violate CLRA Section 1770(a)(16), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresents that its product has been supplied in accordance with its previous representations when they have not.

84.    Plaintiff and the Class acted reasonably when they purchased the Product from Defendants on the belief that Defendants' representations were true and lawful.

85.     Plaintiff and the Class suffered injuries caused by Defendants because (a) they would not have purchased the Product from Defendants absent Defendants' representations regarding the Products recycling qualities; (b) they paid a price premium for the Product they purchased from Defendants based on Defendants' misrepresentations; and (c) Defendants' Product sales did not have the characteristics, benefits, or quantities as consumers were led to believe.

86.     In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class seek injunctive and equitable relief for Defendants' CLRA violations. Plaintiff will mail an appropriate demand letter consistent with California Civil Code § 1782(a). If Defendants fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for claims for actual, punitive, and statutory damages, as appropriate.

## SECOND CAUSE OF ACTION
### Violations of the California Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200

87.     Plaintiff incorporates all preceding factual allegations as if fully set forth here.

88.     Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

89.     Cal. Bus. & Prof Code § 17200, et seq. (the "UCL") prohibits acts of "unfair competition," including any unlawful, fraudulent, or unfair business acts or practices.

90.     Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.

91.     Defendants committed unlawful practices because it violated *inter alia* Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which declares unlawful unfair and deceptive acts or practices in or affecting commerce. Defendants' conduct as alleged herein is both unfair and deceptive.

92.     Defendants also committed unlawful practices because it violated *inter alia* the Consumers Legal Remedies Act, the False Advertising Law, and other applicable laws as described herein.

93.     Plaintiff reserves the right to allege other violations of law which constitute other unlawful business acts or practices as Defendants' conduct is ongoing and continues to this date.

94.     Under the "unfair" prong of the UCL, a business practice is unfair if that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

95.     Defendants' acts and practices are unfair because the gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason.

96.     Defendants' acts and practices are also immoral, unethical, unscrupulous, and offend established public policy and are substantially injurious to Plaintiff and the other members of the Class and could not have been reasonably avoided by Plaintiff and the Class.

97.     Plaintiff and the Class acted reasonably when they purchased the Product from Defendants on the belief that the Product would be recyclable.

98.     As a result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff and the Class have suffered an injury in fact and have lost money in an amount to be determined at the trial of this action.

99.     Plaintiff and the other members of the Class are entitled to an order pursuant to Cal. Bus. & Prof Code §17203, enjoining Defendants' unlawful and unfair conduct, and such other orders and judgments necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff and the Class any amounts assessed and/or paid as a result of Defendants' wrongful conduct.

1
2

**THIRD CAUSE OF ACTION**
**Violations of the California False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500**

3
4
5

100.    Plaintiff incorporates all preceding factual allegations as if fully set forth here.

6
7

101.    Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

8
9
10
11
12
13
14
15

102.    California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

16
17
18
19
20
21
22
23

103.    Defendants misled consumers regarding the Glad Recycling Trash Bags Product as having the recycling qualities without adequately disclosing that it wasn't suitable for recycling.  Defendants' advertisements and omissions were made in and originated from California and fall within the definition of advertising as contained in the FAL in that advertisements were intended to induce consumers to purchase the Product from Defendant. Defendants knew that those advertisements and omissions were false and misleading.

24
25

104.    Defendants' advertising regarding the Product's recycling qualities was false and misleading to a reasonable consumer, including Plaintiff.

26
27

105.    Defendants violated the FAL by misleading Plaintiff and the Class to believe that its Product was suitable for recycling.

28

106.   Defendants knew or should have known, through the exercise of reasonable care, that its advertisements about its Product were misleading.

107.   Plaintiff and the Class lost money or property as a result of Defendants' FAL violations because (a) they would not have the Product absent Defendants' misrepresentations; (c) they paid a price premium for the Product based on Defendants' misrepresentations; and (d) Defendants' Product did not have the characteristics, benefits, or quantities as consumers were led to believe.

### FOURTH CAUSE OF ACTION
### Unjust Enrichment

108.   Plaintiff incorporates all preceding factual allegations as if fully set forth here.

109.   Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

110.   As a result of its unjust conduct, Defendants have been unjustly enriched.

111.   By reason of Defendants' wrongful conduct, Defendants have benefited from improper receipt of funds, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.

112.   As a result of Defendants' conduct it would be unjust and/or inequitable for Defendants to retain the benefits of its conduct without restitution to Plaintiffs and the Class. Accordingly, Defendants must account to Plaintiff and the Class for its unjust enrichment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, pray for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Defendants bear the costs of any notice sent to the Class(es);

C. Declaring that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendants to make full restitution to Plaintiff and the members of the Class(es);

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Defendants to enjoin them from conducting their business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Defendants to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including the "Recyclable" representations regarding the Products;

G. Ordering a jury trial and damages according to proof;

H. Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

J. Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

K. Ordering such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  March 15, 2024

s/Manfred Muecke
**Manfred, APC**
Manfred Muecke (SBN: 222893)
600 W Broadway, Ste 700
San Diego, CA 92101-3370
mmuecke@manfredapc.com
Phone: 619-550-4005
Fax: 619-550-4006